IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                Plaintiff,

v.

DERRICK L. FREEMAN (01),

                Defendant.

Case No. 13-20070-01-DDC

## MEMORANDUM AND ORDER

Defendant Derrick Freeman has filed two pro se[1] motions. Doc. 410; Doc. 413. Both motions ask the court to reduce his sentence. The motions are mostly motions for compassionate release under 18 U.S.C. § 3582(c)(1), asserting that several extraordinary and compelling reasons warrant relief. Mr. Freeman also seeks relief under 18 U.S.C. § 3582(c)(2), asserting that the Sentencing Commission has lowered his sentencing range with the retroactive Amendment 821 to the Sentencing Guidelines. The court dismisses in part and denies in part the motions, as explained below.

**I.    Background**

In October 2013, Mr. Freeman pleaded guilty to:

- Count 1:  conspiracy to commit Hobbs Act robbery, violating 18 U.S.C. § 1951;
- Count 3:  carjacking, violating 18 U.S.C. § 2119; and
- Count 5:  felon in possession of a firearm, violating 18 U.S.C. § 922(g).

---

[1]     People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Doc. 94 (Change of Plea Minutes); *see also* Doc. 96 at 1 (Plea Agreement); Doc. 158 at 1–2 (Judgment).  As part of the plea agreement, the parties agreed to dismiss Count 2 and Count 4—charges under 18 U.S.C. § 924(c) for using, carrying, brandishing, and discharging a firearm during a crime of violence.  Doc. 82 at 3, 4 (Superseding Indictment); Doc. 96 at 7 (Plea Agreement).  And, under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a 300-month sentence.  Doc. 96 at 6 (Plea Agreement).  A different district judge accepted this proposal and imposed a 300-month sentence.  Doc. 158 at 3 (Judgment).  As this Order is entered, Mr. Freeman's projected release date is August 3, 2035.  *See* Derrick Freeman (Reg. No. 23249-031), https://www.bop.gov/inmateloc/ (last visited Oct. 14, 2025).

He now seeks a reduced sentence.

## II.     Legal Standard

"'Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed; but the rule of finality is subject to a few narrow exceptions.'"  *United States v. Hald*, 8 F.4th 932, 937 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).  Compassionate release under 18 U.S.C. § 3582(c)(1) is one of those exceptions.  When it passed the First Step Act in 2018, Congress amended § 3582(c)(1) to allow a defendant, rather than just the Bureau of Prisons, to move for a sentence reduction—but only "after the defendant has fully exhausted all administrative rights" with BOP.  18 U.S.C. § 3582(c)(1)(A); *see also United States v. Eccleston*, 543 F. Supp. 3d 1092, 1125 (D.N.M. June 10, 2021) (recounting history of First Step Act).  Exhaustion aside, the court may grant a defendant's motion for compassionate release only if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the 18 U.S.C. § 3553(a) factors favor a reduced sentence.  *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

Another exception to the rule of finality is 18 U.S.C. § 3582(c)(2), which "authorizes a district court to reduce a sentence 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" *United States v. Chavez-Meza*, 854 F.3d 655, 657 (10th Cir. 2017) (quoting 18 U.S.C. § 3582(c)(2)).

Liberally construing Mr. Freeman's motions, he seeks compassionate release under § 3582(c)(1) and a reduced sentence based on a retroactive amendment to the Guidelines—Amendment 821—under § 3582(c)(2). The court discusses the merits of these requests, next.

### III.     Analysis

The court begins its analysis with exhaustion. It then turns to Mr. Freeman's compassionate-release motion and evaluates the extraordinary and compelling reasons Mr. Freeman has asserted. The court next considers whether the § 3553(a) factors favor reducing Mr. Freeman's sentence. In the end, the court denies Mr. Freeman's compassionate release request. The court then analyzes Mr. Freeman's § 3582(c)(2) request for a reduced sentence based on Guidelines Amendment 821, which it dismisses for lack of jurisdiction. And the court concludes with Mr. Freeman's motion to appoint counsel. The court denies this requested relief, as well.

#### A.     Exhaustion

As mentioned earlier, to move for compassionate release, a defendant must exhaust his administrative remedies with BOP. 18 U.S.C. § 3582(c)(1)(A). Because exhaustion is a claims-processing rule, it's up to the government to invoke a defendant's failure to exhaust. *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021). The government has done so here, asserting that Mr. Freeman has failed to exhaust. Doc. 412 at 4; Doc. 415 at 4.

To demonstrate exhaustion, Mr. Freeman submitted two documents that show his request to BOP. In a response to Mr. Freeman dated August 1, 2023, the warden rejected Mr. Freeman's

claim for compassionate release based on his sleep apnea and his status as caregiver to his mother and six children. Doc. 410 at 29. Mr. Freeman hasn't submitted the original request that triggered this response. Separately, in a request dated July 26, 2024, Mr. Freeman asked the warden for compassionate release based on his high blood pressure and his sick mother. Doc. 414 at 3. The warden denied the request. *Id.* at 2. In sum, Mr. Freeman asked the warden for compassionate release based on sleep apnea, high blood pressure, and the need to care for his ailing mother and six children.

But Mr. Freeman goes far beyond these three grounds in the compassionate-release motion he filed with this court. In his filings, Mr. Freeman asserts the following extraordinary and compelling reasons for compassionate release: (i) cruel and unusual punishment by BOP; (ii) substandard medical care in prison; (iii) a change in law; (iv) his status as caregiver for his minor children; (v) his overly long sentence; (vi) errors in counting his credits; and (vii) his health problems. The government asserts that Mr. Freeman's claims of extraordinary and compelling circumstances differ between his request to BOP and his motion before the court, so he has failed to exhaust. This argument is best characterized as "issue exhaustion." *See United States v. Parada*, No. 03-40053-JAR-1, 2020 WL 4589781, at *4 (D. Kan. Aug. 10, 2020) (characterizing argument that request to warden must match compassionate-release motion filed with court as issue exhaustion).

Issue exhaustion in the compassionate-release context is the subject of dispute. *Compare United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) ("[A]n inmate is required to present the same or similar ground for compassionate release in a request to [BOP] as in a motion to the court."), *with United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022) ("[W]e see no reason to limit [a defendant's] motion for compassionate release in the district court to only those

grounds for compassionate release he identified in his request to the BOP."). Our Circuit hasn't weighed in yet with published authority. But the Circuit, in an unpublished opinion, held that defendants must exhaust administrative remedies for each issue they later take to court. *United States v. Gieswein*, 832 F. App'x 576, 577–78 (10th Cir. 2021) (holding that, because defendant's "request to the warden did not include COVID-19 as a reason for compassionate release," the district court properly dismissed his COVID-19 argument for failure to exhaust administrative remedies). *Gieswein* is persuasive and it best predicts the approach our Circuit is likeliest to adopt in a published decision.

The court thus concludes that Mr. Freeman has exhausted his compassionate release requests but only for those requests based on his health issues[2] and the need to care for his ailing mother and six children.[3] The court finds Mr. Freeman didn't exhaust the rest of his asserted extraordinary and compelling reasons. The court moves to the merits of Mr. Freeman's motions, next.

### B.     Extraordinary and Compelling Reasons

As just mentioned, Mr. Freeman has asserted a variety of extraordinary and compelling reasons for his release:

1. Cruel and unusual punishment by BOP, Doc. 410 at 4–6;
2. Substandard medical care in prison, *id.* at 11–12;
3. A change in law that affects his sentence, *id.* at 23–28;

---

[2] Though Mr. Freeman raised specific health problems in his requests to the warden, his filings raise general health concerns. *See, e.g.*, Doc. 416 at 2. The court nonetheless considers Mr. Freeman's health-based arguments exhausted because our court "consistently has rejected a hyper-technical or strict, issue exhaustion approach." *United States v. White*, No. 09-20143-03-DDC, 2021 WL 492897, at *3 (D. Kan. Feb. 10, 2021).

[3] Though his request to BOP mentioned his caregiving responsibilities for his mother, Doc. 410 at 29, Mr. Freeman's motion mentions only his role as a caregiver for his children, Doc. 413 at 4. So, the court only addresses the latter reason in its decision on the merits.

4. The caregiver for his minor children has died or become incapacitated and he is their only available caregiver, Doc. 413 at 4;

5. He received an overly long sentence, Doc. 416 at 2;

6. BOP has calculated his credits incorrectly, Doc. 413 at 23; Doc. 416 at 3; and

7. His health problems, Doc. 416 at 2.

And, as just explained, of these seven extraordinary and compelling reasons for his relief, Mr. Freeman only has exhausted grounds four and seven. The court nonetheless evaluates the merits of all seven. *See United States v. Fillman*, No. 06-10218-JWB, 2025 WL 1918570, at *3 (D. Kan. July 11, 2025) (considering unexhausted extraordinary and compelling reasons for compassionate release "to avoid the waste of resources that would likely flow from Defendant refiling his motion for compassionate release with the required documentation or otherwise seeking reconsideration by providing the necessary documents"); *see also United States v. Madrid*, 735 F. Supp. 3d 1379, 1389 (D.N.M. 2024) (finding it "prudent" to address unexhausted extraordinary and compelling reasons).

### 1. BOP Cruel & Unusual Punishment

Mr. Freeman asserts that BOP has forced him to spend multiple months in segregation and cited him for disciplinary infractions for refusing to get involved in the reckless and violent "politics" of prison. Doc. 410 at 4–5. He claims BOP is punishing him "for trying to do right." *Id.* at 6.

The court concludes this circumstance doesn't present an extraordinary and compelling reason for Mr. Freeman's release. These kinds of claims are not raised properly in a motion for compassionate release. *United States v. Tatum*, No. 12-20066-29-KHV, 2024 WL 5106693, at *3 (D. Kan. Dec. 13, 2024) (explaining that constitutional claims for cruel and unusual punishment "should be brought—if at all—in a separate civil action, not as part of a motion for

compassionate release."). And even if they were, the court concludes that these allegations do not present extraordinary and compelling reason for compassionate release.[4] As defendant's argument implies, prison politics are ordinary—the opposite of extraordinary and compelling. And it is well established that an inmate "has no constitutional right to be assigned any particular prison or custody classification." *Elnicki v. Bd. of Cnty. Comm'rs*, No. 11-3198-SAC, 2012 WL 3025091, at *3 (D. Kan. July 24, 2012) (collecting cases). Nor has plaintiff alleged that BOP has put him at "substantial risk of serious harm" and acted with deliberate indifference—the two requirements under Supreme Court precedent to demonstrate an Eighth Amendment violation by a prison officer. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### 2. Substandard Medical Care

Mr. Freeman's second ground for compassionate release relies on his medical circumstances. Doc. 410 at 12. He takes issue with BOP's policies surrounding medication-assisted treatment for opioid use disorder. *Id.* Medication-assisted treatment, he asserts, is the best way to treat opioid use disorder, but his facility doesn't offer medication-assisted treatment until an inmate nears the end of his sentence. *Id.*

Numerous "district courts have found that the BOP's inadequate provision of medical care can qualify as an extraordinary and compelling reason for release, even where medical conditions are not life-threatening." *United States v. Belin*, No. 10-CR-2213 MV, 2023 WL 3867751, at *4 (D.N.M. June 7, 2023) (collecting cases). The Sentencing Commission has explained that extraordinary and compelling circumstances exist when a defendant "is suffering

---

[4] A Sentencing Commission policy statement imagines that some constitutional violations by BOP can qualify as extraordinary and compelling reasons for compassionate release. U.S.S.G. § 1B1.13. Specifically, the policy statement provides that extraordinary and compelling reasons exist when a defendant was a victim of sexual abuse or physical abuse by a correctional officer. *Id.* § 1B1.13(b)(4). Mr. Freeman has not even alleged any kind of abuse.

7

from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

Here, as Mr. Freeman acknowledges, BOP offers medication-assisted treatment. BOP just doesn't offer that treatment when Mr. Freeman wants it. And, as Mr. Freeman also acknowledges, medication-assisted treatment lowers a person's risk of dying from a drug overdose *after release*. The court thus has no trouble detecting a reasoned basis for BOP's treatment-near-release rule. So, the court concludes that this doesn't present an extraordinary and compelling reason for release.

### 3. Change in Law

Mr. Freeman next argues that his sentence "is no longer valid due to change of law—the existence of a new retroactive rule of law in *United States v. Davis*[.]" Doc. 410 at 23. In *Davis*, the Supreme Court concluded that the residual clause in § 924(c)'s definition of "crime of violence" was unconstitutionally vague. 588 U.S. 445, 448 (2019). Our Circuit has held "that the Supreme Court has made *Davis* retroactively applicable to cases on collateral review." *In re Mullins*, 942 F.3d 975, 979 (10th Cir. 2019).

Because this argument challenges the validity of Mr. Freeman's sentence, it implicates 28 U.S.C. § 2255. *United States v. Wesley*, 60 F.4th 1277, 1288 (10th Cir. 2023); *see also United States v. Elliott*, No. 24-8019, 2024 WL 4100574, at *3 (10th Cir. 2024) (concluding that district court properly treated *Davis* challenge to sentence as governed by § 2255). Our Circuit has instructed district courts to treat this kind of motion as a § 2255 motion. *Id.*

The court thus construes this part of Mr. Freeman's filings as a § 2255 motion. That's a problem for Mr. Freeman. He's already filed a § 2255 motion. Doc. 231. A district judge dismissed this motion as untimely and, even if timely, lacking merit. Doc. 270. And the Circuit

8

affirmed, concluding that "no reasonable jurist would debate the district court's conclusion that Freeman failed to state a valid ineffective-assistance-of-counsel claim." Doc. 280 at 3. Then, after *Davis*, Mr. Freeman asked the Circuit's permission to file a second or successive § 2255 motion. Doc. 358. The Circuit denied that request, explaining that *Davis* interpreted § 924(c) and Mr. Freeman wasn't convicted of violating § 924(c). *Id.* at 2–3. Recall that the parties agreed to drop the § 924(c) charges against Mr. Freeman as part of his plea agreement. Doc. 96 at 7 (Plea Agreement). The court thus dismisses this part of Mr. Freeman's motion as an unauthorized, successive § 2255 motion. And even if it weren't, the Circuit has indicated already that the *Davis* holding wouldn't change anything for Mr. Freeman.

The court also denies Mr. Freeman a certificate of appealability on this issue. *Elliott*, 2024 WL 4100574, at *3 (denying certificate of appealability to defendant appealing denial of motion for compassionate release where district court construed *Davis* challenge to sentence as § 2255 and dismissed motion as unauthorized, successive § 2255).

### 4. Caregiver for Minor Children

Mr. Freeman asserts that the caregiver for his children has died or become incapacitated and he is the only available caregiver for the children. Doc. 413 at 4. This follows the blueprint of Guideline § 1B1.13(b)(3)(A), which provides that the "death or incapacitation of the caregiver of the defendant's minor child" qualifies as an extraordinary and compelling reason for compassionate release.

But, even though he submitted 76 pages to the court, Mr. Freeman provides no details about his children's caregiver. *See* Doc. 410; Doc. 413; Doc. 414; Doc. 416. This is fatal to his claim because Mr. Freeman, as the movant, "bears the burden of establishing that he is eligible for a sentence reduction." *United States v. Edelen*, No. 20-cr-00191-CMA, 2022 WL 4768322, at *1 (D. Colo. Oct. 3, 2022) (first citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir.

2016); and then citing *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)). The court thus rejects this fourth ground for compassionate release. *See United States v. Frederick*, No. CR-22-110-SLP, 2025 WL 1227978, at *3 (W.D. Okla. Apr. 28, 2025) (denying motion for compassionate release where defendant only checked box that children's caregiver had died or become incapacitated and failed to "elaborate on this claim or provide any supporting evidence").

### 5. Overly Long Sentence

Mr. Freeman next claims that he deserves a sentence reduction because he received an overly long sentence. Doc. 416 at 2. The Guidelines provide that an "unusually long sentence" may present extraordinary and compelling reasons for compassionate release under certain circumstances. U.S.S.G. § 1B1.13(b)(6). The Guidelines allow the court to consider changes in the law (other than non-retroactive Guidelines amendments) if a defendant (1) received an unusually long sentence and (2) has served at least ten years of that sentence. *Id.* The court may only consider such a change in the law if the change "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed[.]" *Id.*

Mr. Freeman's argument on this point is difficult to follow. Doc. 416 at 2. Whatever it claims, at bottom, he hasn't demonstrated that a change in law would produce a gross disparity between the sentence he received and the sentence the court would impose today. He asserts that he "should not receive a sentencing enhancement for conduct already accounted for in the count of conviction[.]" *Id.* at 4. Specifically, Mr. Freeman argues that "applying U.S.S.G. § 5K2.1 and § 5K2.6 would constitute impermissible double counting in this instance." *Id.* at 5. But Mr. Freeman's sentence doesn't involve § 5K2.1—a policy statement about departure if the crime resulted in death. *See generally* Doc. 149 (PSR). Nor does it involve § 5K2.6—a policy

statement about offenses where a "weapon or dangerous instrumentality was used or possessed[.]" Also, Mr. Freeman briefly mentions uncharged conduct and acquitted conduct, Doc. 416 at 6, but these don't apply in his case, either.[5] The court thus concludes that Mr. Freeman has failed to demonstrate that he received an unusually long sentence qualifying as an extraordinary and compelling reason for compassionate release.

### 6.     Credits

Liberally construing his filings, Mr. Freeman argues that the court should reduce his sentence because he was not given various credits. *First*, he argues that the court should have given him credit for a state-court sentence. Doc. 413 at 23. Mr. Freeman hasn't provided any details about this alleged state sentence. The court agrees with the government that this claim is "unintelligible." Doc. 415 at 3. The court thus rejects it. *Second*, Mr. Freeman argues that BOP has calculated his First Step Act and Second Chance Act time credits incorrectly. Doc. 416 at 3. The court rejects this claim, too. A challenge to time credits does not qualify as an extraordinary and compelling circumstance. *See United States v. Torres-Campaz*, No. 16-cr-457-T-27CPT, 2021 WL 2580671, at *1 (M.D. Fla. June 23, 2021) ("[Defendant's] challenges to his sentence

---

[5]     The PSR only mentions *dismissed* conduct, which is addressed in § 5K2.21. Doc. 149 at 30 (PSR ¶ 148). As relevant here, § 5K2.21 provides that the

> court may depart upward to reflect the actual seriousness of the offense based on conduct . . . underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason[.]

The PSR provides that the dismissed conduct in Mr. Freeman's case—two § 924(c) charges for discharging a firearm during a crime of violence—provided a potential ground for departure. Doc. 149 at 30 (PSR ¶ 148). But the court didn't depart from the Guidelines range. Doc. 159 at 2 (Statement of Reasons). That is, the district judge formerly assigned to this case didn't rely on § 5K2.21 when imposing the sentence. Instead, the court imposed a sentence outside the Guidelines based on the parties' binding plea agreement. *Id.* at 3. And so, to the extent one could construe Mr. Freeman's motion to challenge the application of § 5K2.21, the court rejects that challenge. The sentencing judge didn't apply § 5K2.21.

and purported inability to obtain good time credits do not constitute extraordinary and compelling circumstances."); *United States v. Galdieri*, No. 19-CR-757-2 (JMF), 2022 WL 2118539, at *1 (S.D.N.Y. June 13, 2022) (concluding defendant had failed to present extraordinary and compelling reasons based on BOP's alleged failure to "properly calculate[] Galdieri's good-time credits" because "he has other remedies[.]"); *see also Edwards v. Balisok*, 520 U.S. 641, 643–44 (1997) ("[T]he sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus[.]").

### 7. Health Problems

In his requests to BOP, Mr. Freeman mentioned sleep apnea and high blood pressure. As relevant here, the Guidelines provide that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" qualifies as an extraordinary and compelling reason. U.S.S.G. § 1B1.13(b)(1)(B)(i) (2024). Or, alternatively, a defendant can show extraordinary and compelling reasons by demonstrating that he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1)(C).

Mr. Freeman provides no detail about the severity of his medical conditions, nor the effects of his medical conditions on his ability to care for himself in prison. Mr. Freeman never shows that his medical conditions require currently unprovided long-term or specialized care. The court thus concludes that Mr. Freeman has failed to demonstrate that his health problems qualify as extraordinary and compelling reasons for compassionate release. *See United States v. Tinsley*, No. 21-2057, 2022 WL 881574, at *3 (10th Cir. March 25, 2022) (affirming denial of motion for compassionate release where defendant "presented extensive evidence of sleep apnea,

but he did not show how it had affected his ability to provide self-care"); *United States v. Ward*, No. CR-01-181-R, 2025 WL 424529, at *1–2 (W.D. Okla. Feb. 6, 2025) (finding defendant's medical conditions, including high blood pressure, didn't qualify as extraordinary and compelling reason).

In sum, Mr. Freeman has failed to establish extraordinary and compelling reasons for his release. That conclusion alone would suffice to decide Mr. Freeman's motion, but the court nonetheless continues its analysis. It considers the § 3553(a) factors, next.

### C.   § 3553(a) Factors

Even if Mr. Freeman had presented extraordinary and compelling reasons warranting a reduced sentence, the § 3553(a) factors do not warrant relief. Before the court may reduce a defendant's term of imprisonment under § 3582(c)(1)(A), the court must consider the relevant sentencing factors identified in § 3553(a). *McGee*, 992 F.3d at 1042. Those factors include: (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3553(a). These factors don't favor a reduced sentence.

Mr. Freeman has a lengthy criminal history. The PSR calculated a criminal-history category of VI—the highest the Guidelines go. Doc. 149 at 22 (PSR ¶ 89). Mr. Freeman also committed two violent crimes. For the armed robbery, he entered the victim's home, forced him to the ground, fired two rounds next to the victim's head, and struck the victim with the gun, demanding money. Doc. 149 at 6–7 (PSR ¶ 19). For the carjacking, Mr. Freeman robbed the victim of his wallet and keys while his accomplice pointed a pistol at the victim. *Id.* at 8 (PSR

¶ 26). Thanks only to his plea agreement, Mr. Freeman avoid the harsh penalties of § 924(c). It's regrettable but true. Mr. Freeman's sentence adequately reflects his personal history and characteristics and the seriousness of this violent offense.

Mr. Freeman next asserts that he's taken numerous self-improvement classes, attends daily classes, and participates in various forms of therapy. Doc. 413 at 26. The court commends Mr. Freeman's efforts and hopes that he will continue these admirable efforts. But they don't obscure another truth—Mr. Freeman has received various sanctions while incarcerated, including drug and alcohol, assault, and fighting offenses. Doc. 412 at 15–16. The need for rehabilitative services remains.

The court thus concludes that the § 3553(a) factors do not favor a reduced sentence. A reduced sentence would not provide just punishment, promote respect for the law, reflect the seriousness of Mr. Freeman's violent crimes, deter crime, or protect the public.

### D. Amendment 821

Mr. Freeman's filings mention that he received a two-point enhancement for committing these offenses while on parole for a separate case. Doc. 410 at 13. The court construes this as a motion for a reduced sentence under § 3582(c)(2) that invokes Amendment 821 to the United States Sentencing Guidelines. Doc. 410 at 13–14; Doc. 413 at 25.

Section 3582(c)(2) allows the court to modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" "Section 3582(c)(2) plainly tells us a defendant must overcome three distinct hurdles before he may obtain a sentence reduction thereunder." *United States v. C.D.*, 848 F.3d 1286, 1289 (10th Cir. 2017) (emphases omitted). The court need only consider the first hurdle here: "under the statute's 'based on' clause, the defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered

14

subsequent to defendant's sentencing. If not, the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed." *Id.*

Amendment 821 Part A lowers the criminal-history points a defendant receives if he committed the offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." United States Sentencing Commission, *Amendment 821*, https://www.ussc.gov/guidelines/amendment/821. The Guidelines previously added two criminal-history "points if the defendant committed the instant offense while under any criminal justice sentence[.]" U.S.S.G. § 4A1.1.(d) (2021). Following Amendment 821, the Guidelines now add just one-criminal history point if the defendant committed the offense while under a criminal-justice sentence—and only if the defendant received seven or more criminal-history points. U.S.S.G. § 4A1.1.(e) (2024).

Here, Mr. Freeman received two extra criminal-history points at sentencing because he committed the offenses of conviction while under a state-court criminal justice sentence. Doc. 149 at 21–22 (PSR ¶ 88). With these two extra points, his criminal-history score went from 15 to 17. *Id.* After Amendment 821, he would receive just one extra criminal-history point, bringing his total to 16. But this reduction doesn't lower Mr. Freeman's Guideline range. That's so because he falls under criminal-history category VI, which applies when a defendant has 13 or more criminal-history points. U.S.S.G. ch. 5 pt. A (sentencing table). Category VI views 16 points the same way it views 17 points. So, Amendment 821 doesn't change Mr. Freeman's Guideline range. The court thus lacks jurisdiction over this part of Mr. Freeman's motion and dismisses it. *C.D.*, 848 F.3d at 1289.

### E. Motion to Appoint Counsel

Mr. Freeman asks the court to appoint him counsel. Doc. 413 at 6. "There is no constitutional right to counsel beyond the direct appeal of a criminal conviction[.]" *Coronado v.*

*Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008).  Our court appointed the Office of the Federal Public Defender to help eligible defendants seek relief under Amendment 821.  *See* D. Kan. S.O. 23-03.  The Federal Public Defender has not entered an appearance on Mr. Freeman's behalf.  The court denies this request.

### IV.   Conclusion

The court—liberally construing Mr. Freeman's filings as a § 3582(c)(1) motion for compassionate release on seven grounds and a motion to reduce his sentence under § 3582(c)(2)—denies the motions in part and dismisses the motions in part, as explained in this Order.  The court also denies Mr. Freeman a certificate of appealability on his unauthorized, successive § 2255.  And the court denies Mr. Freeman's request that the court appoint him counsel.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Doc. 410 (Motion for Compassionate Release/Reduce Sentence) is dismissed in part and denied in part.

**IT IS FURTHER ORDERED THAT** Doc. 413 (Motion for Compassionate Release and Motion to Appoint Counsel) is dismissed in part and denied in part.

**IT IS FURTHER ORDERED THAT** the court denies Mr. Freeman a certificate of appealability on his unauthorized, successive § 2255 motion.

**IT IS FURTHER ORDERED THAT** the court denies Mr. Freeman's request that the court appoint him counsel.

**IT IS SO ORDERED.**

Dated this 31st day of October, 2025, at Kansas City, Kansas.

                                                           **s/ Daniel D. Crabtree**
                                                           **Daniel D. Crabtree**
                                                           **United States District Judge**